UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALMA E. WHEELER,

                Plaintiff,

     -against-                             6:16-CV-1176 (LEK/TWD)

THE BANK OF NEW YORK MELLON,

                Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Alma Wheeler, a former employee of defendant Bank of New York Mellon ("BNY"), brings in her second amended complaint discrimination, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e *et seq*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Dkt. No. 43 ("SAC"). Presently before the Court is Defendant's motion to dismiss the SAC. Dkt. No. 47 ("Motion"). For the reasons that follow, the Motion is granted in part and denied in part.

## II.    BACKGROUND

### A.  Factual History

The following facts are taken from the allegations in the Amended Complaint, which are assumed to be true when deciding a motion to dismiss for failure to state a claim. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012).

Plaintiff, a woman of Mexican origin, was employed by Defendant as a Trade Specialist beginning in 2007 when she was forty-nine years old. SAC at 1–3. Plaintiff was promoted to Account Administrator I in 2011, but has not been promoted again since that date. Id. at 2–3.

Plaintiff has worked in client services since the 1970s, and is college-educated. Dkt. No. 43 at 25–39 ("Exhibits") at 25.

### 1. Promotion of Plaintiff's Coworkers

In February 2015, one of Plaintiff's coworkers, Wilfredo Fragoso was promoted to "CSO II." Id. at 4. Plaintiff alleges that Fragoso is a Puerto Rican man who is between forty and forty-five years old. Id. In the same month, Ivette Alleyne and Kerry White were also promoted to the positions of "CSS I" and Account Administrator II, respectively. Id. Alleyne was in her forties and White was in her twenties. Id. Gwen Stone, a woman between thirty-five and forty years old, was promoted in February 2015. Defendant promoted Rachel Norris and Elizabeth Loucy, both American women between the ages of twenty and thirty, in March 2015. Id. In September 2015, Meloney Dailey, an American woman who is between twenty and thirty years old, was promoted to Account Administrator II. Id. Dailey had one year of experience in her previous position. Id.

In December 2015, Plaintiff's coworker, Jessica Wethje, who was hired in 2013, was laterally transferred from her previous position to an Account Administrator II or III position. Id. at 2. Wethje was American and between thirty and thirty-five years old. Id. Plaintiff listed several other alleged promotions, and states that each person promoted was either American or Puerto Rican and that the vast majority of these employees were between twenty-five and forty years old. Id. at 23–24. Following her promotion to Account Administrator I in 2011, Plaintiff had applied for the Account Administrator II position on many occasions. Id. at 3.

## 2. *Alleged Discrimination by Defendant*

When Plaintiff began her job as an Account Administrator I for Defendant, Plaintiff's supervisor, Denise Ortiz, told her that Defendant did not offer training. Id. at 5. Plaintiff later found out that the training existed, but that Defendant did not initially offer it to her. Id. Eventually, Fragosa was assigned to train Plaintiff, but he ignored Plaintiff when she sought help. Id. at 5–6. Plaintiff's superiors would not entertain her complaints about her lack of guidance. Id. Alleyne then started training Plaintiff, and Fragosa began complaining that Plaintiff was not doing her job correctly. Id. at 7. Fragosa then repeatedly asked Plaintiff to define "equity" at every meeting throughout the remainder of 2011, until she printed out the word's definition in an attempt to make him stop. Id. at 8. Her coworkers also did not celebrate her birthday in 2011. Id. at 10.

From 2011 onward, Alleyne allegedly regularly mocked Plaintiff's accent loudly, saying, "WHAT DID YOU SA[Y]/YOU CRACK ME UP." Id. at 8. In July 2015, Plaintiff's unnamed supervisor told a coworker, who would soon be traveling to Mexico with her Mexican parents, that the coworker was "going to the place w[h]ere [the coworker] belong[s]." Id. at 16–17. Finally, Plaintiff alleges that Ortiz "repeatedly stated 'I cannot stand these people' when speaking with the Mexican Manager or any Mexican clients." Id. at 17.

## 3. *Alleged Retaliation*

In December 2014 or January 2015, Plaintiff filed a discrimination grievance with "the company ethics hot line." Id. at 18. She states that, in January 2015, Defendant's security team falsely accused her of threatening a coworker. Id. Plaintiff also maintains that, in July and December 2015, Ortiz denied her request to work from home, even though Plaintiff's doctor

advised her to do so. Id. at 19. Finally, in September 2015, Ortiz and Alleyne issued Plaintiff a written warning for performing "conduct . . . that was deemed offensive." Id. Plaintiff appealed this warning to Defendant's human resources department, but it was upheld. Id. Ortiz issued Plaintiff another written warning in December 2015. Id. at 20. In addition to receiving written warnings, Plaintiff alleges that her performance reviews suffered after she filed a grievance with Defendant's ethics hot line. Id. Between 2012 and 2014, she received positive performance reviews. Id. at 20–21. After Plaintiff's December 2014 grievance, her performance reviews became "totally negative." Id. at 21.

### B. Procedural History

Plaintiff filed a grievance with the Equal Employment Opportunity Commission ("EEOC") on January 15, 2016. Dkt. No. 47-5 ("Notice of Charge"). She filed a complaint on September 28, 2016. Dkt. No. 1 ("Complaint"). Defendant moved to dismiss the Complaint in December 2016, Dkt. No. 13, and the Court granted the motion in part and dismissed certain claims with leave to amend, Dkt. No. 24 ("June 2017 Order"). Plaintiff filed her first amended complaint on August 14, 2017, Dkt. No. 33 ("FAC"), and her SAC on September 15, 2017, SAC. On November 17, 2017, Defendant moved to dismiss the SAC. Mot.; Dkt. No. 47-3 ("Memorandum"). Plaintiff filed a brief in opposition, Dkt. No. 54 ("Response"), and Defendant filed a reply brief, Dkt. No. 56 ("Reply"). Plaintiff also seeks leave to further amend her pleading to add claims under the New York State Human Rights Law ("HRL"). Resp. at 14.

### III.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV.  DISCUSSION

### A.  Request for Leave to Amend

In her Response, Plaintiff requests leave to amend her complaint to add claims under the New York State Human Rights Law ("HRL"), because she recently learned that the HRL provided a generous statute of limitations. Resp. at 14. Under the Federal Rules of Civil Procedure 15(a), a district court should freely grant leave to amend when justice so requires. Fed. R. Civ. P. 15(a). A court "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Despite the substantial leeway afforded to pro se litigants, providing Plaintiff a fourth opportunity to amend her pleading would be wholly unnecessary and burdensome to the Defendant and to the Court. See, e.g., Gomes v. Avco Corp., 964 F.2d 1330, 1336 (2d Cir. 1992) (finding the district court was well within its discretion to deny leave for a fourth time); Abascal v. Hilton, No. 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 30 2008) (holding a pro se plaintiff is not entitled to leave to amend "where the plaintiff has already been given a chance to amend his pleading"); Best v. City of New York, No. 12-CV-7874, 2014 WL 163899, at *11–12 (S.D.N.Y. Jan. 15, 2014) (denying leave to amend where pro se plaintiff "has already been granted ample opportunity to state claims against defendants"). Plaintiff's proposed HRL claims could have been raised in one of her past three complaints. Resp. at 7. The initial Complaint was filed over a year ago, and Plaintiff's reason for adding a claim—that she recently discovered that the HRL may provide a strategic advantage—does not outweigh the delay and further expense that adding this claim will cause. Therefore, the Court denies Plaintiff's request to further amend her pleading.

**B. Motion to Dismiss**

Liberally construed, Plaintiff raises the following claims under Title VII and the ADEA: (1) disparate treatment claims, based on Defendant's alleged failure to promote Plaintiff; (2) hostile work environment claims; and (3) retaliation claims.

### 1. Failure to Promote Claims

Defendant argues (1) that Plaintiff's failure to promote claims are largely time-barred; and (2) for the few promotions that are not time-barred, Plaintiff fails to state a claim under either Title VII or the ADEA. Mem. at 5–8.

### a. Timeliness

A plaintiff bringing a Title VII claim in New York must file a complaint with the EEOC within three hundred days of the date on which the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); see also Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996) (stating that, because New York "has both antidiscrimination laws and an antidiscrimination agency," "the time period for filing claims with the EEOC is . . . 300 days") (internal citations and quotation marks omitted). "When, as in this case, a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004). For instance, the continuing violation doctrine provides that "if a plaintiff has experienced a continuous practice and policy of discrimination . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004) (internal citations and quotation marks omitted); see also Fitzgerald v. Henderson, 251 F.3d 345,

362 (2d Cir. 2001) ("[T]he continuing violation theory may be applied where there is a showing of specific and related instances of discrimination against a single plaintiff."). However, "[i]t is well-settled that certain adverse employment practices such as . . . failure to promote . . . are discrete acts and cannot be considered as part of an ongoing pattern or policy of discrimination." Robles v. Cox & Co., Inc., 841 F. Supp. 2d 615, 628 (E.D.N.Y. 2012) (citing Mix v. Del. & Hudson Ry. Co., 345 F.3d 82, 89 (2d Cir. 2003)). The same administrative requirements, deadlines, and exceptions apply to the statute of limitations under the ADEA. Richardson v. Hartford Pub. Lib.

The SAC does not indicate when Plaintiff filed her EEOC grievance. Defendant attached as an exhibit the Notice of Charge regarding Plaintiff's EEOC grievance, which indicates that the grievance was filed on January 15, 2016. Notice of Charge. In her Response, Plaintiff states that she submitted a complaint to the EEOC on December 11, 2015, but that the EEOC asked her to modify the grievance "until they were satisf[ied]." Resp. at 2.[1] Therefore, Plaintiff "considered [her] complaint filed on December 11, 2015." Id.

Despite Plaintiff's somewhat unclear assertion to the contrary, the Court takes judicial notice of the January 15, 2016 filing of the EEOC grievance. See Smith v. Westchester County, 769 F. Supp. 2d 448, 461 n.12 (S.D.N.Y. 2011) ("[D]ocuments filed with the EEOC or the DOL, and determinations issued by those agencies, are records of administrative proceedings which

---

[1] Generally, a court may only look to the pleadings when viewing a motion to dismiss, but because of the liberal treatment of a pro se party's papers, it is appropriate for a court to consider additional allegations outside of the complaint so long as they are consistent with the pleadings. Cusamano v. Sobek, 604 F. Supp. 2d 416, 420 (N.D.N.Y. 2008) (citing Donhauser v. Goord, F. Supp. 2d 119, 121 (N.D.N.Y. 2004), vacated in part on other grounds, 317 F. Supp. 2d 160 (N.D.N.Y. 2004)).

may properly be relied upon in connection with the Court's review of a motion to dismiss.");

Muhammad v. N.Y.C. Transit Auth., 450 F. Supp. 2d 198, 204–05 (E.D.N.Y. 2006)

("[P]laintiff's EEOC charge and the agency's determination are both public records, of which

this Court may take judicial notice."). Therefore, allegations of conduct occurring before

March 21, 2015 (300 days before January 15, 2016) fall outside the 300-day limitations period.

Plaintiff's failure to promote claims concerns eight instances where Defendant promoted

one of her coworkers to a position that Plaintiff applied for. SAC at 2–4. Plaintiff states that these

promotions occurred between February 2015 and December 2015. Id.

First, the three promotions that allegedly occurred in February 2015—concerning Ivette

Alleyne, Kerri White, and Gwen Cary Stone, SAC at 4—fall outside the 300-day limitations

period. Because failures to promote are discrete acts, the continuing violation doctrine does not

rescue these allegations from the limitations period. These promotions will therefore not be

considered as part of Plaintiff's failure to promote claims.

Second, Defendant promoted Elizabeth Loucy and Rachel Norris in March 2015. SAC at

3. Defendant maintains that Loucy and Norris were promoted on March 1, 2015, and that their

promotions are thus time-barred. Mem. at 6. However, at this stage, the Court "must limit itself

to facts stated in the complaint or in documents attached to the complaint as exhibits or

incorporated in the complaint by reference." Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d

Cir. 1991). The precise dates that Loucy and Norris were promoted are found only in internal

company documents that Defendant attached as exhibits to their Motion. Dkt. Nos. 47-8 to -9.

The Court may not consider these documents alongside the SAC, nor may it judicially

noticethese dates. E.g., Fed. R. Evid. 201 (listing types of facts of which a court may take judicial

notice). Considering only the facts alleged in the SAC, Norris and Loucy were promoted on an unknown date in March 2015. SAC at 3. Resolving all plausible inferences in Plaintiff's favor, as the Court is required to do at this stage, Norris and Loucy may have been promoted after March 21, 2015. Therefore, these promotions are not time-barred. Because Defendant raises no substantive argument in support of its Motion to dismiss Plaintiff's failure to promote claims with regard to these promotions, Plaintiff's Title VII and ADEA failure to promote claims survive to the extent that they are premised on Defendant's promotion of Norris and Loucy over Plaintiff.

Third, Plaintiff alleges that Defendant promoted Jessica Wethje to an Account Administrator II or III position in December 2015. SAC at 2. Defendant contested this allegation, stating that Wethje "was hired as an Account Administrator II on August 5, 2013." Mem. at 7. While Defendant's factual contestation would typically be irrelevant at the motion to dismiss stage, Plaintiff concedes in her Response that Wethje was hired in 2013 and that she was laterally transferred "from [the] Foreign Banks team to [the] Latin American team" in December 2015. Resp. at 7. Because Plaintiff concedes that Wethje was hired as an Account Administrator II in 2013, not in December 2015, the failure to promote claims based on Wethje's promotion is time-barred.

Finally, Defendant does not challenge the timeliness of Plaintiff's claims regarding its promotion of Meloney Dailey. This claim, therefore, is not time-barred.

<u>b.</u>  <u>Merits of Plaintiff's Failure to Promote Claims</u>

*i.  Title VII Claim*

Turning to the merits of Plaintiff's Title VII failure to promote claim, the only remaining promotion is Defendant's alleged promotion of Meloney Dailey from Account Administrator I to Account Administrator II in September 2015. SAC at 3. Defendant argues that Plaintiff fails to state a claim because she does not sufficiently allege that she was more qualified than Dailey. Mem. at 7–8. The Court disagrees.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In an employment discrimination action, the plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506–10 (1993). To do so, a plaintiff must allege:

> (1) that [s]he is a member of a protected class; (2) that [s]he applied for a promotion to a position for which [s]he was qualified; (3) that [s]he was rejected for the position; and (4) after this rejection, the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff, or the employer kept the position open and continued to seek applicants.

<u>Gordon v. City of New York</u>, No. 14-CV-6115, 2015 WL 3473500, at *7 (S.D.N.Y. June 2, 2015). However, at the motion to dismiss stage, "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive." <u>EEOC v. Port Auth. of N.Y. & N.J.</u>, 768 F.3d 247, 254 (2d Cir. 2014). Rather, "it must at a minimum assert

nonconclusory factual matter sufficient to [render its claims plausible]." Id. In particular, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) ("Title VII thus requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin.").

Here, the Court finds that Plaintiff's allegations provide "plausible support to a minimal inference of discriminatory motivation." Vega, 801 F.3d at 83. Plaintiff argues that she is a Mexican woman who has repeatedly applied for the Account Administrator II position since 2011, but that, in 2015, Dailey was hired instead of Plaintiff. SAC at 3. Furthermore, Plaintiff alleges that she was more qualified than Dailey. To support this claim, she appended several documents to the SAC, including her resume and a document that appears to describe BNY's requirements for the Administrator II position. Dkt. No. 43 at 25–39 ("Exhibits") at 25. The position requires a "Bachelor's Degree or equivalent" and "[t]wo to four years [of] experience." Id. As the Court found in the June 2017 Order, June 2017 Order at 13, Plaintiff's resume indicates that she possesses both of these requirements, Exs. at 25. Furthermore, the Account Administrator II position involves various client service duties, with which Plaintiff claims to have decades of experience. Id. at 25, 29.

By contrast, Plaintiff alleges that Dailey, an American woman, only had one year of experience as an Account Administrator I before being promoted to Account Administrator II.

12

SAC at 3. The Court finds that Plaintiff has plausibly alleged that Dailey was less experienced than her and, thus, less qualified for the Account Administrator II position. Therefore, because Defendant does not state any other grounds for dismissing Plaintiff's Title VII failure to promote claim with respect to Dailey's promotion, that claim survives dismissal to the extent that it is premised on Defendant's promotion of Dailey. See Dacier v. Reardon, No. 17-CV-418, 2018 WL 2022610, at *3 (N.D.N.Y. Apr. 27, 2018) (Kahn, J.) (denying motion to dismiss the plaintiff's failure to promote claim where the plaintiff alleged that the defendant hired people "with significantly less experience" than the plaintiff).

### ii.  ADEA Claim

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The class protected by this statutory prohibition is limited to persons 40 years of age or older." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (citing § 631). ADEA claims are analyzed "under the same framework as claims brought pursuant to Title VII." Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994)).

As with a Title VII failure to promote claim, a plaintiff alleging discriminatory failure to promote under the ADEA must allege that "[s]he was a member of a protected class, that [s]he was qualified for the job for which [s]he applied, that [s]he was denied the job and that the denial occurred under circumstances giving rise to an inference of impermissible discrimination." Witkowich v. Gonzales, 541 F. Supp. 2d 572, 578 (S.D.N.Y. 2008). A plaintiff may raise an

inference of discriminatory intent by "show[ing] that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Martinez v. Davis Polk & Wardwell LLP, 208 F. Supp. 3d 480, 486–87 (E.D.N.Y. 2016) (internal quotation marks omitted) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)). "In the context of a promotion, that means comparing the qualifications of the plaintiff with those of the person promoted." Id. at 487. A plaintiff may also create an inference of discriminatory intent by pointing to verbal remarks that are "probative of discrimination." Testa v. Carefusion, No. 14-CV-5202, 2016 WL 4099113, at *5 (E.D.N.Y. Aug. 2, 2016).

Defendant challenges Plaintiff's ADEA failure to promote claim by stating that this claim as presented in the SAC suffers from the same defects that existed in the original Complaint. Mem. at 5 (citing June 2017 Order at 14–18). Specifically, Defendant states that Plaintiff "did not sufficiently establish the qualifications of her alleged comparators" and that the "age-related remarks" she references are "insufficient to establish discriminatory intent." Id. Therefore, Defendant asks the Court to dismiss this claim, just as it did in the June 2017 Order. Id.

The Court finds that portions of Plaintiff's ADEA failure to promote claim survive dismissal. As described above, Plaintiff alleged that she was more experienced than Dailey, a woman between twenty and thirty years old who was promoted to an Account Administrator II position in September 2015. SAC at 3. Plaintiff's allegations regarding Dailey's promotion, while sparse, create a plausible inference that the decision to promote Dailey over Plaintiff was motivated by age discrimination. See Rouse v. City of New York, No. 08-CV-7419, 2009 WL 1532054, at *6 (S.D.N.Y. June 2, 2009) (finding that the plaintiff established a prima facie case of age discrimination under the ADEA where the plaintiff alleged that he had "more

14

experience than at least two . . . candidates" who were promoted over him). Therefore, Plaintiff's ADEA failure to promote claim survives dismissal to the extent that it is premised on Defendant's promotion of Dailey over Plaintiff to the Account Administrator II position.

Although Plaintiff plausibly alleged that Dailey's promotion gives rise to an inference of discrimination, the same cannot be said regarding the other promotions Plaintiff lists in support of her ADEA claim. Plaintiff provides a list of twenty-seven coworkers who were promoted between 2012 and 2014, and states that all but two of these employees are between the ages of twenty-five and forty. Exs. at 23–24. Plaintiff states in conclusory fashion that "most of the promoted individuals . . . posses[s] less relevant work experience compare[d] to" her, SAC at 4, but fails to provide any detail regarding the comparative qualifications of these employees. Therefore, the Court cannot determine whether any of these promotions give rise to an inference of discrimination.

Plaintiff also attempts to support her ADEA claim by identifying age–related comments made by her coworkers, which she alleges creates an inference that Defendant's failure to promote her was motivated by age discrimination. Specifically, she alleges that an employee named Mr. Rampersad stated in 2011 that "if you are older than 43 and have not reach[ed] the position that you are looking for with the company, it will be unlikely to happen." Resp. at 5. She also alleges that her coworkers frequently told her that she "looks good for her age," and that either a manager, supervisor, or co-worker asked her, "shouldn't you be retired?" Resp. at 4. A plaintiff may create an inference of discriminatory intent by pointing to verbal remarks that are "probative of discrimination." Testa v. Carefusion, No. 14-CV-5202, 2016 WL 4099113, at *5 (N.D.N.Y. Aug. 2, 2016). However, as the Court held in the June 2017 Order, the remarks

Plaintiff cites do not raise an inference of discriminatory intent, because she does not allege that the people who made the statements "had anything to do with [Defendant's] refusal to give her the promotions she wanted." June 2017 Order at 17–18.

For the reasons described above, Plaintiff's ADEA failure to promote claim survives only to the extent that it is premised on Defendant's promotion of Dailey over Plaintiff.

### 2. *Hostile Work Environment Claims*

Plaintiff alleges hostile work environment claims under Title VII and the ADEA based on Defendant's alleged pervasive and severe harassment directed toward Plaintiff on account of her age and Mexican origin. SAC at 5–18. Defendant argues that the "vast majority" of Plaintiff's hostile work environment claims are time-barred, and that she describes conduct that has "no plausible connection to her age or her national origin." Mem. at 9.

Hostile work environment claims based on the ADEA and Title VII are analyzed under the same legal framework. Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003). To state a hostile work environment claim, a plaintiff must first demonstrate that she experienced harassment "sufficiently severe or pervasive to alter the conditions of [her] . . . employment and create an abusive working environment." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). In evaluating a hostile work environment claim, a court must have some "reason to believe" that the incidents it considers were "motivated by the plaintiff's [protected characteristics]." Sanderson v. N.Y. State Elec. & Gas Corp., 560 F. App'x 88, 92 (2d Cir. 2014).

In order to show that workplace misconduct was sufficiently severe to support a hostile work environment claim, a plaintiff must allege that defendant either engaged in a single incident

of "extraordinarily severe" behavior or created a workplace environment that was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [the plaintiff's] employment were thereby altered." Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013) (citation omitted); see also Terry, 336 F.3d at 148 (noting that "while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of [her] employment altered for the worse") (quotations, citations and emphasis omitted).

Without deciding whether Plaintiff's hostile work environment claims are timely, the Court finds that the alleged discrimination that she faced was insufficiently severe to support a hostile work environment claim. Plaintiff's allegations of harassment in the SAC are largely unchanged from her allegations in the original Complaint. SAC at 8–18; June 2017 Order at 3–5. Accordingly, like in the June 2017 Order, the Court finds that the vast majority of Plaintiff's allegations do not implicate national origin or age, and that the combined magnitude of those allegations that do implicate these characteristics are insufficiently severe or pervasive to serve as the basis for a hostile work environment claim. June 2017 Order at 18–20. Therefore, Plaintiff's hostile work environment claim is dismissed.

### 3. Retaliation Claims

Plaintiff alleges that Defendant retaliated against her in violation of Title VII and the ADEA after she complained of discrimination to Defendant's "ethics hot line" in either December 2014 or January 2015. SAC at 18.

Under Title VII, an employer may not discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because

[s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."§ 2000e-3(a). A retaliation claim is "not dependent on the merits of the underlying discrimination complaint." Davis v. State Univ. of N.Y., 802 F.2d 638, 642 (2d Cir. 1986). "The Court analyzes retaliation claims under the ADEA using the same 'burden-shifting' formula from Title VII employment discrimination claims." Bohnet v. Valley Stream Union Free Sch. Dist. 13, 30 F. Supp. 3d 174, 181 (E.D.N.Y. 2014). To establish a prima facie case for retaliation on the basis of national origin in violation of Title VII, a plaintiff must plead facts that show that: "(1) [she] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [her]; and (3) there existed a causal connection between the protected activity and the adverse action." La Grande v. DeCrescente Distrib. Co. Inc., 370 F. App'x 206, 212 (2d Cir. 2010). Analysis of ADEA retaliation claims follows identical analysis. Bohnet, 30 F. Supp. 3d at 181.

Plaintiff alleges that Defendant carried out the following retaliatory acts against her following her hotline report: (1) in January 2015, Defendant's security team falsely accused Plaintiff of threatening a coworker; (2) in July and December 2015, Plaintiff's request to work from home was denied "even though it was against the medical advi[c]e from [Plaintiff's] doctor;" (3) in September and December 2015, Ortiz issued Plaintiff written warnings for allegedly engaging in offensive or inappropriate conduct; and (4) Plaintiff's performance reviews, which were positive before 2015, became negative. SAC at 18–21. Defendant does not challenge that Plaintiff's ethics hotline grievance constituted protected activity. Rather, it argues that the retaliation claim is partially time-barred, that there is no causal connection between Plaintiff's written warnings and her ethics hotline grievance, and that the alleged retaliatory acts

are not adverse actions. Mem. at 12–15.

First, the Court agrees that the January 2015 incident, where Defendant's security team accused Plaintiff of threatening a coworker, is time-barred. It occurred prior to March 21, 2015, and is thus outside the 300-day limitations period. Moreover, the continuing violation doctrine is inapplicable because the complained-of action—being falsely accused of threatening a coworker—is a discrete incident and does not appear related to any of the other adverse actions Plaintiff alleges. Therefore, the January 2015 incident cannot support Plaintiff's retaliation claim.

Second, the Court agrees with Defendant that Plaintiff fails to allege a causal connection between her ethics hotline complaint and Ortiz's issuance of written warnings. A plaintiff may rely on temporal proximity between the protected activity and the subsequent adverse action to allege causation. Blanco v. Brogan, 620 F. Supp. 2d 546, 554 (S.D.N.Y. 2009) (quoting Davis v. State Univ. of N.Y., 802 F.2d 638, 642 (2d Cir. 1986)). However, "[w]here . . . a plaintiff relies exclusively on timing to plead causation, the temporal proximity between the protective activity and adverse employment action must be 'very close.'" Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 441 (E.D.N.Y. 2015) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

Plaintiff filed her grievance in December 2014 or January 2015. SAC at 18. Ortiz issued Plaintiff written warnings in September and December 2015. Id. at 19–20. Therefore, there was at least an eight month gap between Plaintiff's grievance and the first alleged adverse action, and a year-long gap between her grievance and the second alleged adverse action. Such gaps are far too long for the Court to infer causation. See Buckman v. Calyon Sec. (USA), Inc., 817 F. Supp. 2d 322, 338 (S.D.N.Y. 2011) ("The lapse of nine months between [the plaintiff's] complaint and

his termination is far longer than courts in this Circuit have permitted to infer a causal relationship."); Ruhling v. Tribune Co., No. CV-04-2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (stating that district courts in the Second Circuit consider the "passage of two months between the protected activity and the adverse employment" to be the limit beyond which causation can no longer be inferred (collecting cases)).

Plaintiff provides no other allegations to support an inference of a causal connection between her grievance and the written warnings. Plaintiff does state that she received the September 2015 warning a "few weeks after" the ethics hot line issued a response regarding the grievance she filed eight or nine months earlier. SAC at 19. However, temporal proximity must exist between the protected activity and the adverse action, not between the adverse action and the employer's evaluation of the protected activity. For these reasons, the written warnings Plaintiff received cannot support her retaliation claim.

Third, the Court finds that Ortiz's denials of Plaintiff's requests to work from home in July and December 2015 are insufficiently severe to constitute an adverse action. "The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). However, Plaintiff does not clearly state that Ortiz's denials negatively impacted her in any way. While she states, without any supporting detail, that Ortiz's July 2015 denial was "against the medical advi[c]e" of her doctor, SAC at 19, such an allegation is too vague and underdeveloped to permit an inference that the denial would dissuade a reasonable worker from making a charge of discrimination.

Furthermore, in the context of adverse employment actions in a plaintiff's prima facie case of discrimination under Title VII, district courts in the Second Circuit have consistently held that "denial of work-from-home . . . status" does not constitute an adverse employment action. Martinez-Santiago v. Zurich N. Am. Ins. Co., No. 07-CV-8676, 2010 WL 184450, at *7 (S.D.N.Y. Jan. 20, 2010) (collecting cases). Because the adverse employment action inquiry is more relaxed in retaliation cases, e.g., Vega, 801 F.3d at 90 (stating that the definition of "adverse employment action" in Title VII retaliation cases "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII"), Ortiz's denial of Plaintiff's request to work from home cannot be considered an adverse employment action.

Finally, Defendant argues that its issuance of a negative performance review to Plaintiff in September 2015 cannot support her retaliation claim because a negative performance review, standing alone, is not an adverse action. Mem. at 15–16 (citing Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 756 (2d Cir. 2004)). The Court disagrees. Although the Second Circuit has in the past suggested that a negative performance review must be accompanied by allegations or evidence that the review altered the plaintiff's "terms and conditions of [] employment," Sanders, 361 F.3d at 756, a later Supreme Court opinion announced a far more generous standard for what constitutes an adverse employment action for a retaliation claim, Burlington N., 548 U.S. at 57. In light of this shift, the Second Circuit has since found that "a poor performance evaluation could very well deter a reasonable worker from complaining," Vega, 801 F.3d at 92, and thereby "constitutes an 'adverse action' for purposes of a retaliation claim," Cerni v. J.P. Morgan Secs., LLC, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016). Therefore, Plaintiff has

sufficiently alleged that her September 2015 performance review constitutes an adverse action.

Puzzlingly, Defendant does not argue that Plaintiff fails to allege a causal connection between her ethics hotline grievance and her September 2015 performance review. Due to the lack of temporal proximity between the grievance and the performance review, such an argument likely would have supported Defendant's Motion. However, "[a] district court may not dismiss an action for failure to state a claim based upon grounds not raised by the parties." Jones v. Albany Cty. Civil Serv. Comm'n, 985 F. Supp. 280, 282 (N.D.N.Y. 1997). Therefore, the Court rejected the only argument Defendant raised in opposition to the allegedly retaliatory performance review, this portion of Plaintiff's retaliation claim survives dismissal.

V.     **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 47) is **GRANTED in part** and **DENIED in part**. The Motion is **DENIED** as to (1) Plaintiff's Title VII discrimination claims premised on Defendant's promotion of Meloney Dailey, Elizabeth Loucy, and Rachel Norris; (2) Plaintiff's ADEA discrimination claim premised on Defendant's promotion of Dailey; and (3) Plaintiff's Title VII and ADEA retaliation claims premised on Defendant's issuance of a negative performance review in September 2015. The Motion is **GRANTED** in all other respects, and those portions of Plaintiff's second amended complaint (Dkt. No. 43) are **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:    August 06, 2018
          Albany, New York


_(signature)_
Lawrence E. Kahn
U.S. District Judge